'Argued March 26, modified April 10, 1928.

# EMMA HUNZIKER v. CLAUDE C. HUNZIKER.

### (265 Pac. 1089.)

**Divorce—Evidence Held not to Preponderate in Favor of Wife Suing for Divorce on Ground of Cruel and Inhuman Treatment.**
  1. In wife's suit for divorce on ground of cruel and inhuman treatment, her affectionate letters to and treatment of defendant after period of alleged cruelties and his testimony and that of his witnesses *held* to preclude finding that evidence preponderated in plaintiff's favor.

**Divorce—Court is Justified in Hesitating to Grant Divorce, Where Effects will be Visited on Innocent Children.**
  2. Where effects of decree will be visited on innocent children, court is justified in being hesitant about allowing a divorce.

---

. Divorce, 19 C. J., p. 142, n. 52, p. 194, n. 36.

From Multnomah: LOUIS P. HEWITT, Judge.

Department 1.

MODIFIED.

For appellant there was a brief and oral argument by *Mr. Albert H. Tanner.*

For respondent there was a brief and oral argument by *Mr. Benj. B. Goodman.*

ROSSMAN, J.—This is a suit for a divorce. The prayer for relief is predicated upon charges of cruel and inhuman treatment. The parties are the parents of three small children; they own no property. The plaintiff asks for the custody of these children and monthly installments of money for their support.

1. There being no questions of pleading involved, we shall proceed at once with a consideration of the evidence. The parties were married October 20, 1915, in Colorado, when each was quite young. At that

time the defendant was endeavoring to secure a homestead and was required to remain upon the land a few months more; he had constructed upon it a small habitation. Plaintiff's life upon this homestead constitutes the first chapter in her narrative of cruel and inhuman treatment; she complains of the primative conditions under which she was compelled to live. As winter descended upon them, and the walls of the little hut proved inadequate to afford shelter from the piercing cold prevalent in that region, she returned temporarily to her parents' home. In December of 1916 the period of residence upon the homestead was completed; a child had been born to the couple, and the family of three now moved to another farm. In fact after leaving the homestead the family resided in succession upon several farms as tenants. Most of these places were owned by relatives of the plaintiff or the defendant. All of these farms were in the same general vicinity and were in a region many miles remote from railway connection. The homestead property especially was in a section of Colorado into which the settler had but recently ventured to find a home. All of the dwellings were rude; bathtubs and similar conveniences were unknown and corncobs constituted the principal article of fuel. Upon rare occasions a vegetable dealer came to the small general merchandise establishments; otherwise, the inhabitants of this section were compelled to rely upon the yield of their own land, or upon the stock of canned vegetables carried by the general merchandise establishment. Apparently the soil gave forth a living most reluctantly and sparingly.

Finally the plaintiff's mother left this land of hard work, hot summers, cold winters and primitive conditions, and came to the City of Portland. Here there

resided a sister and other members of the plaintiff's family. In the latter part of 1923 the plaintiff's sister sent her the sum of $150 with which transportation was purchased, and the plaintiff and the children then left Colorado for Portland.

Her narrative of cruel and inhuman treatment is confined entirely to the eight years spent in Colorado. She testified that the food was limited in variety and generally in quantity; that she was compelled to work upon the farm in excess of her strength; that the defendant's sexual demands were excessive; that the defendant neglected his farm; that he did not cultivate at the proper time; failed to keep his fences in repair, with the result that the livestock wandered into growing crops; that he permitted the hogs to wallow around the home, and that the cows drank out of the barrel containing the drinking water for household purposes. Further she testified that he furnished plaintiff and the children with such inadequate clothing that she was compelled to accept the cast-off garments of her sister, and that during the long, cold winters he supplied such scanty fuel that she and the children suffered severely. Her testimony was in part supported by that of her father, sister and sister-in-law.

If the court is in a position to say that the evidence establishes the foregoing as facts, a safe ground would thus be afforded for equity to grant the relief of a decree of divorce. Of course the settler's wife who accompanies him into remote regions to win a homestead cannot expect the conveniences of city life. But the obstacles devised by nature, reluctant to submit to the plow of the homesteader, should not be augmented by a husband, careless and indifferent to his surroundings, and wilfully unsanitary in his

habits. But the plaintiff's story does not stand un-
challenged. The defendant seeks no decree of di-
vorce for himself. He testified that his affection for
his children is so great that he can submit to and
forgive the plaintiff's charges providing the home
can be kept intact. Witnesses residing in Colorado,
who bore no relationship to either plaintiff or defend-
ant, presented their testimony to the court by way of
deposition, refuting much of the plaintiff's evidence.
They pictured the defendant as a dutiful husband, a
kind father and an industrious farmer. One of these
witnesses was a school-teacher; she had roomed and
boarded in the plaintiff's and defendant's home in
Colorado from February, 1921, to May, 1921. It
would seem that the food, shelter and fuel must have
been fairly satisfactory if it attracted the country
school-teacher. Likewise the plaintiff's father stayed
at their home upon one occasion for a period of two
weeks' time.

The principal evidence against the plaintiff was
produced by her own hand and pen. When she left
Colorado she joined the other members of her family
in Portland; here she resided in her mother's home.
Pursuant to a promise which the defendant says she
made to him when she left Colorado the plaintiff
wrote letters to the defendant. Five of these were
preserved and are now before us as exhibits in this
case. They are all endearing in their terms; they
sympathize with the defendant because he was com-
pelled to remain upon the farm; they speak of the
conveniences of city life and urge the defendant to
dispose of his properties in Colorado and join the
family in Portland; they address the defendant as
"My own darling," and contain such expressions as:
"I am so lonesome for you"; "I wish we had a place

here"; "I miss you so much"; "I am always happy
with you"; "I wish you were here this minute for
me to cuddle up in your arms"; "I wonder if you
miss your big baby a little bit"; "Darling, I hate the
thought of your staying on that old ranch. We do
have nice things here"; "Honey, I can't imagine hav-
ing Xmas without you"; "You know you are the
darling of my heart, oh, I do love you"; "Honey,
let's try living in town a while please dear. * * Your
fare here will be only $58.00." The defendant testi-
fied, that besides the five letters which were preserved,
others were received but destroyed before he left Colo-
rado. The plaintiff makes no denial that she wrote
the defendant many letters, and the defendant testified
that all of the letters except the last few were as
affectionate as those we have before us. The five
letters before us are all well composed, recite little
items of news, inform the defendant of the condition
of the children, and generally conform to what one
would expect a young wife to write to her distant
husband. February 29, 1924, defendant left Colo-
rado, arriving in Portland March 2d. He was met
at the depot by the plaintiff; her reception of him was
an affectionate one. They proceeded to the home of
the plaintiff's mother, and there he lived for two
weeks, leaving when he found employment at a dairy
farm some miles out of Portland. On three occasions
the plaintiff visited the defendant at this dairy; each
time they embraced each other in an affectionate
manner. This is vouched for not only by the de-
fendant, but also by his employer and others present.
Plaintiff's explanation of these letters is that they
do not contain her true sentiments; she testified that
he urged her to return to Colorado, and that the only
way she could answer him was by the use of these

endearing terms. The phraseology of the letters, however, is so natural, that this explanation does not satisfy. Refuting her explanation we have her affectionate treatment of the plaintiff after his arrival in Portland.

2. We thus have a situation where the plaintiff has testified to a set of circumstances which, if true, constitute cruel and inhuman treatment. She adds to her narrative the statement that defendant's treatment undermined her health and caused him to become repulsive to her; in fact so repulsive that she took refuge in Portland. Upon the other hand, we have many letters speaking of affection, and urging him to dispose of his meager properties in Colorado and join the family in the new home. We have the fact that when the husband came to Portland, he was met at the depot by his wife and taken to her mother's home. What now, shall be our findings in regard to her charges; shall we say that the charges are established by a preponderance of the evidence? Certainly her letters do not express the grievances and resentment of one who has been wronged. A wife's welcome at the depot and an affectionate embrace is a reward generally reserved only for a kind and dutiful husband. Likewise a residence of two weeks in the mother-in-law's home is rarely accorded to a husband from whose home a wife has fled, undernourished, mistreated and scantily clad. The letters, plaintiff's treatment of defendant after his arrival in Portland, his testimony and that of his witnesses, precludes a finding that the evidence preponderates in favor of the plaintiff. Possibly casting some light upon the matter, we find that after the plaintiff came to Portland, she went into the employ of one of her sisters who operated a restaurant in Portland; this sister

had had three matrimonial ventures. This circumstance, together with the gilded allurements of the city, may have caused a change in her attitude towards the defendant, especially when the defendant obtained employment on a dairy ranch as distinguished from city employment. Ordinarily, the judge who heard the testimony is in a better position than we are to ascertain the facts. But in this case a substantial portion of the proof was by way of depositions and the foregoing letters. Where the effects of the decree will be visited upon innocent children, a court is justified in being hesitant about allowing a divorce. The Circuit Court is therefore directed to dismiss the plaintiff's suit. The attorney fee allowed below in behalf of the plaintiff may stand; she may also have her costs.                          MODIFIED.


RAND, C. J., and COSHOW and McBRIDE, JJ., concur.